Wilkin, J.
The counsel for defendant lay down four propositions to support the judgment of the circuit court: 1. The policy never went into effect. 2. The minds of the parties never met upon the subject-matter of the contract of insurance. 3. Part of the property was personalty encumbered by a chattel mortgage, contrary to the provisions of the policy. 4. Part was a building situate on ground not owned in fee simple, contrary to the provisions of the policy.
The evidential facts connected with the negotiation of the insurance are not in dispute. But there is a dispute about the ultimate facts which may be deduced from the proven facts: 1. Are they mere inferences which the judgé may draw? 2. Are they legal presumptions which the law makes? 3. What conclusion of law arises from the ultimate facts thus determined?
As is usual in insurance cases, we are confronted with a mass of diverse decisions and doctrines. We would have to write a treatise if we attempted to untangle the confusion and conflict of law .presented in the briefs. We have not the time, if we had the inclination, to attempt to harmonize the cases. We shall dispose of this case upon its *275 own intrinsic facts and the legal principles which we deem safe guides to its solution. To that end we shall consider the defendant’s four propositions briefly. . v .
First. Did the policy not go into effect? This is based on the fact that when Welles notified Smith that the Teutonia company would cancel ¡its policy, Smith answered that he would accept-.the notice and take the usual five days to obtain other insurance. If the colloquy had ended there, the Teutonia policy would have been current when the fire occurred some hours later. But the dialogue continued. Welles: “I can rewrite the policy in the Hudson’s Underwriters” (Lumber Insurance Company). Smith, after consulting Ensel: “Go ahead, rewrite the policy and deliver it this afternoon.” That was done, and the fire occurred four hours later. Counsel for defendant say: “They wished to substitute one policy for another, but intended the new policy should come into force four days later.” We think otherwise; the exchange was complete when the new policy was delivered that afternoon at 2 o’clock. The jury so found by their verdict, and the circuit court erred if it meant to reverse that finding.
Second. Did the minds of the parties meet upon the subject-matter of the insurance? Counsel for defendant sajf the subject-matter is the risk of loss by fire which the underwriter agrees to take. He quotes Richards on Insurance, page 118: “And if, at the time of closing the contract, the one party has knowledge of facts material to the risk which, with or without design, he fails to disclose to the other party, then the parties 'are not contracting *276 with reference to the same chance. There is no meeting 'of' the minds upon the same essential •subject-matter of their contract.” The author supports that text by an extract from Lord Mansfield's ‘.decision in the leading case of Carter v. Boehm, 3 Burr., 1905: “The special facts upon which the contingent chance is to be computed lie -most commonly in the knowledge of the insured only. The underwriter trusts to his representations, and proceeds upon confidence that he does not keep back any circumstance. in his knowledge to mislead the underwriter into a belief .that the circumstance does not exist, and induce him to estimate the risk as if it [the circumstance] did •not exist.' The keeping, back such circumstance is a fraud, and therefore the policy is void.”
The circumstance alleged to have been withheld is thé clause in Ensel’s bill of sale from the Wabash company releasing the company “from all •liability on account of fire to said elevator while being wrecked.” Was this release a material element of the risk about which the- parties were negotiating when. they arranged to exchange the Teutonia for the Hudson’s Underwriters policy? If it became material at all, it did so only as a feature, not of the risk but of the contract; for if it became an element of the contract of indemnity it did so not as affecting the risk but only as affecting the contract of subrogation. That is to say, the policy contained two contracts: One to indemnify Ensel for loss by fire, the other to subrogate the company to any right he might have against anybody else to recover for the same loss by fire “from negligence or otherwise.”
*277 Now, it is not contended by the defendant that these obligations were reciprocal in the sense that the breach of the latter discharged the former, nor that Ensel actually agreed to confer upon the defendant the right of subrogation. The defendant’s claim is quite different from either of these. It is that there being a subrogation clause in the printed stipulations, the plaintiff assented to it when he or his agent accepted the policy,, because the law presumes that he read it.
The next step in the argument is, that the láw presumes, when he thus adopted .that clause, he represented that he still had all rights of recovery from everybody who should by negligence or otherwise set fire to the building.
The third step is, that there was another stipulation preceding the subrogation clause, viz: “This policy shall be void if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof;” therefore he deceived the insurance company, because he did not, between the delivery of the policy to Smith at 2 o’clock and the fire at 6 o’clock, reveal to the company that he had released his right of recovery for negligent fife by the Wabash company. All-the while it is conceded Ensel did not see the policy nor know of these stipulations, and he was asked no questions, and made no statements about anything.
Here we have a presumption upon a presumption, one of which cannot be true without the other is presumed- to be true, from which to deduce the conclusion of deception—a conclusion deceptive. *278 surely enough. Formal logic may not be of much value as a constructive science, but it has legitimate use for criticism; it will expose error and puncture a fine fallacy. Let us syllogize defendant’s'argument:'
Whoever knows and does not speak, lies.
The law assumes that E. knew and that E. did speak.
Therefore E. lied.
But this lame conclusion would not avail defendant, if it were sound. The defendant must proceed .further. For, let us note, the defense stated in the answer is not what defendant’s counsel misconstrues it to be in the argument. It seeks to avoid the contract for fraud. The defense is deceit, not want of mutuality. He must show not only that the represented fact was not true, but that the presumed misrepresentation was made for the purpose of deceiving the defendant; and that the defendant relied upon the representation as true. Does the law presume thát Ensel did what he did not in fact, and then presume that what he did not in fact he did for an evil purpose? Are we to have a third presumption, grounded upon the second, which was grounded on the first? This argument on presumptions is strained and artificial and does not win our confidence.
• And still ■ this defense would not be complete. The insurance company was not deceived if its agent Bowen made a thorough inspection of the risk and inquired how much interest Ensel had in this building. Did he see the Wabash company’s copy of the contract with Ensel when he went *279 down to the elevator to investigate the risk? The nature and extent of Ensel’s interest was determined by that contract, and “his interest” was, by the very language of the “rider,” a very material element of the risk. If Ensel’s interest was the perfect and complete ownership of the structure which he was to demolish, then he had all the right of recovery from the Wabash company or anybody who caused its destruction by negligent fire or otherwise.- If the company’s agents did not examine this phase of the risk, can the company complain now ?
Counsel for the company allow no presumption that the company knew what it might have known; and justly, we think, because it is a question of construction and inference, whether he affirmed the fact by silence, or whether under all the circumstances the company was under duty to inquire. But counsel also concede no ground for inference. We think there was ground for inference, and that the trial judge properly decided the question. If the circuit court ruled the question otherwise, it must have done so because there was no evidence that the company assumed the risk upon its own knowledge; ignoring the clear, uncontroverted testimony that Bowen “made a thorough inspection of the risk in detail.”
On this question of knowledge, we are cited to the cqse of Nelson v. Continental Insurance Co., 182 Fed. Rep., 783. That company had issued to Nelson a policy against fire to his “five-story building, situate Nos. 138-142 E-S of North Market St.” The policy had a “rider,” to-wit: “this insurance also covers the assured’s one-half *280 interest .in the south wall of the four-story * . building, situate Nos. 144-146 North Market St.” The court said: “The rider indicates that the insurer had knowledge that the south wall of the Pilcher building was a party-wall, outside of and beyond the limits of the premises generally described in the policy, which were the assured’s ‘five-story * * * building, situate Nos. 438-142 E-S of North Market street * * *,’ while the rider extends the protection of the insurance to the assured’s interest in the south wall of the building described as ‘situate Nos. 144-146 North Market .St." * * *.’ Under these circumstances defendant must be presumed to have had knowledge of plaintiff’s interest in the subject of the insurance, and to have issued its policy with such knowledge.”
Counsel for defendant here criticise the case, but- reluctantly admit that the federal court rightly raised the presumption under the circumstances of that case. Counsel can hardly consistently contend that the trial court went wrong in drawing an inference of the same sort under the circumstances of the case at bar.
Furthermore, there may be a question whether, in the light of all the circumstances, the stipulation as to the subrogation was in fact violated. It runs in the future. “If this company shall claim that the- fire was caused by the act or neglect of •any person or corporation * * * this company shall be subrogated- to all right of recovery by the insured '* * * and such right shall be assigned to.'this' company.” That the -Wabash company caused the. fire, does not appear. If tha,t fact shall *281 subsequently appear, the defendant may assert it in an action for breach of this covenant. “Sufficient unto the day is the evil thereof.”
This stipulation is used in this action to work a forfeiture. The law abhors a forfeiture, and will countenance it only strictissimi juris. Besides, the stipulation, being written in the policy by the insurer for the protection of the insurer, is to be interpreted most strongly against the insurer. Here the insurer seeks to construe it as implying, nay, ■as importing by presumption of law, a representation that the insured had a right of recovery against the Wabash company. The representation can hardly be imported into the document by strict construction. The most the defendant could claim is a mere inference that the plaintiff represented that he had the right to sue the Wabash company if that company should negligently or otherwise set fire to the property, and that he so represented falsely and purposely.- That was an inference for the trial judge, if he found the facts would justify it. The judge did not so find. We 'think he was right; he properly construed the contract.
Third. The property was incumbered by an undischarged mortgage upon the Wabash railroad. What we have said supra about notice of and inquiry into the extent of his interest, applies to this defense. Insurance is often written, “upon the assured’s interest as his interest may appear.” The “rider” is not materially different in effect. .It was notice that his ownership of the- building was not perfect, absolute ownership.
*282 The mortgage does not appear in the record, but we glean that there was the usual proviso that the railroad company might dispose of equipment and material, replacing the same with new. For aught that appears this is what the railroad company was doing. If , so, the lien upon this lumber was discharged. This defense is not valid.
Fourth. The elevator was situate on ground not owned by the plaintiff in fee. The property insured was not the building, but the lumber contemplated as personalty, though part of a structure “in process of demolition.” The property was upon the land where it was described to be.. The fact that the fee simple title to the land was not in the owner of the personalty insured, is not material.
The error of counsel throughout this case, lies in a confusion of terms. They mistake inference for presumption—a slip too often unconsciously made by judges as well as lawyers. A presumption is a rule which the law makes upon a given state of facts; an inference is a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.
A presumption of law may be prima facie only— that is, a hypothesis which will admit of proof to the contrary; or it may be absolute—that is, a postulate which, for reasons of legal policy, the law will not permit to be contradicted. The latter may be a mere fiction, assumed to be true, although the known fact may be the very opposite.
*283 It is the latter sort which we are urged to adopt in this case. There may be cases, having somewhat similar features, where judgment upon presumptions may be legitimate. This is not one of them.

Judgment of the circuit court reversed, and that of the common pleas affirmed.

Shauck, C. ]., Johnson, Donahue, Wanamaker and Newman, JJ., concur.